J-A14023-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| ROBERT J. CAVOTO, JR., FISHBONE ADVERTISING, INC., CAVOTO CHIROPRACTORS, P.C., MARGARET FISHER-CATRAMBONE, PENN CENTER PAIN MANAGEMENT, INC., TIPROF, INC., AND INTERNATIONAL HEALTH ALLIANCE, INC. | : : : : : : : : : | No. 2953 EDA 2017 |

Appellants

Appeal from the Order August 15, 2017
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  2005-010716

BEFORE:   GANTMAN, P.J., SHOGAN, J., and PLATT*, J.

MEMORANDUM BY SHOGAN, J.:                **FILED SEPTEMBER 21, 2018**

Robert J. Cavoto, Jr. ("Dr. Cavoto"), Fishbone Advertising, Inc., Cavoto Chiropractors, P.C., Margaret Fisher-Catrambone, Penn Center Pain Management, Inc., TIPROF, Inc., and International Health Alliance, Inc., (collectively "Appellants"), appeal from the order entered August 15, 2017, denying Appellants' motion for post-trial relief following our remand to the trial court.  We affirm.

The trial court made the following findings of fact:

_____
\* Retired Senior Judge assigned to the Superior Court.

1.    Plaintiffs are State Farm Mutual Automobile Insurance Company and State Farm Fire And Casualty Company ("State Farm").

2.    [Appellants] Robert J. Cavoto, Jr., Cavoto Chiropractors, P.C., Penn Center Pain Management, Inc., TIPROF, Inc. and International Health Alliance ("Dr. Cavoto") are doctors of chiropracty or entities offering chiropractic treatment.[1]

> [1] Robert J. Cavoto, D.C.[,] owns and operates the entities offering chiropractic treatment and will be referred to throughout the Decision as Dr. Cavoto.

3.    An Amended Complaint was filed in the Delaware County Court of Common Pleas by State Farm on December 14, 2005.

4.    Count I of State Farm's Amended Complaint seeks a declaratory judgment that, under the Chiropractic Practice Act, 63 P.S. § 625.101 et seq. (the "Practice Act" or the "Act"), and the Motor Vehicle Financial Responsibility Law, 75 Pa. C.S. § 1701 *et seq.* (the "MVFRL"), State Farm is not obligated to remit payments to Dr. Cavoto and his practices for those treatments and procedures delegated to and performed by chiropractic support personnel without special licenses or certifications.

5.    Count I avers that [Appellants] improperly and unlawfully utilized "unlicensed" chiropractic staff[2] to administer various adjunctive procedures and physical therapy (the "delegation" issue).

> [2] In Pennsylvania, there is no licensure requirement for chiropractic assistants.

6.    Count II of State Farm's Amended Complaint seeks a declaratory judgment, that pursuant to 18 Pa.C.S. § 4117 *et seq.* (the "Insurance Fraud Statute"), Dr. Cavoto and his practices violated the Insurance Fraud Statute by purchasing lists of motor vehicle accident victims and contacting those injured individuals regarding potential treatment (the "solicitation" issue).

7.    On September 2 and 3, 2008, the Honorable George A. Pagano presided over a bench trial addressing Counts I and II.[3]

<sup></sup>³ The other three (3) Counts were bifurcated and have not been considered by the trial court. Those Counts include: Count III, Statutory Insurance Violation of 18 Pa.C.S.A. 4117(a)(5) & (6), Count IV Restitution for Mistaken Payment and Count V, Unjust Enrichment.

8. Following trial and upon his consideration of the Amended Complaint, by Order dated July 10, 2009, Judge Pagano ruled against [State Farm] on Count I, the delegation issue, which sought a declaratory judgment determining Dr. Cavoto's delegation of adjunctive procedures to chiropractic support staff was a violation of the Chiropractic Practice Act, and for this reason any invoices submitted by [Appellants] to State Farm were not compensable. Judge Pagano ruled in favor of [State Farm] as to Count II, the solicitation issue.

9. Regarding the delegation issue, [State Farm] filed an appeal to the Pennsylvania Superior Court with respect to the [c]ourt's ruling in favor of Dr. Cavoto on Count I.[1]

10. The Pennsylvania Superior Court considered the record below as it concerns the delegation issue and delivered the following directive: "Upon remand, the trial court should make more specialized findings and determine whether any of the procedures allegedly performed by unlicensed personnel required formal chiropractic education or training, including further inquiry by the court as to the scope of those procedures." State Farm Mut. Auto. Ins. Co. v. Cavoto, 34 A.3d 123, 133 (Pa. Super. 2011).

---

[1] On August 6, 2009, State Farm filed two notices of appeal, both of which this Court subsequently quashed *sua sponte*. State Farm also filed on August 6, 2009, a petition for determination of finality pursuant to Pa.R.C.P. 341(B)-(C). The trial court originally denied the petition, but subsequently amended the order after State Farm petitioned the court to certify the appeal as an appealable interlocutory order pursuant to Pa.R.A.P. 311. On September 4, 2009, the trial court deemed the interlocutory appeal as appealable. On September 24, 2009, the trial court formally denied State Farm's motion for post-trial relief. On October 8, 2009, however, the court amended the order, granting State Farm's request to file a post-trial motion *nunc pro tunc*, but denying the motion on the merits nonetheless. State Farm then filed its notice of appeal on October 21, 2009.

Trial Court Opinion, 7/7/17, at 1-4.

On remand, the trial court conducted a nonjury trial on April 3 and 4, 2017. Following the hearing, the trial court made the following determination:

On the Amended Complaint, Count I, regarding the delegation of certain adjunctive procedures to unlicensed support personnel by licensed chiropractors in the course of treatment of patients having insurance coverage under the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §§ 1701-1799.7 (the "MVFRL"), and determining reimbursement to those licensed chiropractors by insurers under the MVFRL for services rendered in the treatment of those patients, the rights, status and other legal relationships among licensed chiropractors, patients, insureds and insurers under the Chiropractic Practice Act, 63 P.S. § 625.101-625.1106 (the "CPA"), and the MVFRL shall be decided taking into consideration the following declaration of specialized findings:

1. Non-specialized tasks associated with the performance of passive modalities (e.g. the placement of hot/cold packs, turning machines on/off, assisting patients on and off tables) may be delegated to unlicensed support personnel so long as a licensed chiropractor makes all of the clinical decisions.

2. The following adjunctive procedures which are passive modalities may be delegated to unlicensed support personnel so long as a licensed chiropractor makes all of the clinical decisions: (1) Electrical Muscle Stimulation, (2) Mechanical Traction, (3) Hot Packs/Cold Packs, and (4) Hydrotherapy. Once a licensed chiropractor has made the clinical decision regarding a patient's care to utilize one or more of these delegable passive modalities, these delegable passive modalities may be implemented by unlicensed support personnel prior to a daily examination of that patient by a licensed chiropractor.

3. The following adjunctive procedures which are therapeutic procedures may not be delegated to unlicensed support staff: (1) Massage, (2) Therapy, and (3) Therapeutic Exercise.

Trial Court Opinion, 7/7/17, at 14-16. Appellants filed a post-trial motion on July 17, 2017, pursuant to Pa.R.C.P. 227.1. The trial court denied Appellants'

post-trial motion on August 15, 2017. Appellants filed a notice of appeal on September 11, 2017.

On appeal, Appellants purport to present the following issues for our review:

> 1. Can chiropractors delegate therapeutic exercise to unlicensed personnel?
>
> 2. Did the trial court improperly admit Dr. Michael Schneider as an expert witness and place too much emphasis on the weight of his testimony?
>
> 3. Did the trial court improperly overlook the testimony and qualifications of Dr. Jon McCullough, a former Chairman of the State Board of Chiropractic?
>
> 4. Are chiropractors permitted to advise potential patients of their rights under their car insurance policies?
>
> 5. Can State Farm proceed with a damages trial on portions of the Amended Complaint that were never tried?

Appellants' Brief at 2.

Despite this recitation of five issues presented for review, Appellants, throughout their brief, develop and refer primarily to two issues: 1) the "delegation issue," which involved the delegation by chiropractors of certain treatment to unlicensed staff, and 2) the "solicitation issue," which involved Appellants' solicitation practices. Furthermore, on June 27, 2018, Appellants filed an "Application for Partial Withdrawal of Appeal." The Application stated the following:

> Appellants move to partially withdraw their appeal as it relates to the solicitation issue as follows:

> 1.    In this matter, Appellants appealed on two separate issues:  (1) delegation by chiropractors of certain treatment to unlicensed staff and (2) the solicitation practices of the Appellants.
>
> 2.    In fact, in Appellants' Amended Brief, the arguments were delineated between "The 'Delegation' Issue" and "The 'Solicitation' Issue."
>
> 3.    Appellants seek to withdraw their appeal solely as it would apply to the solicitation issue and all arguments supporting their appeal as documented on pages 12 through 15 of their Amended Brief.
>
> 4.    Appellants also seek to withdraw the following question for review:  (4) "Are chiropractors permitted to advise potential patients of their rights under their car insurance policies?"

Appellants' Application for Partial Withdrawal of Appeal, 6/27/18, at 3 (unnumbered).

We hereby grant Appellants' Application for Partial Withdrawal of Appeal.[2]  Accordingly, the "delegation issue" is the sole issue before us for consideration.  More specifically, we note that this Court narrowed the issue for the trial court's consideration on remand:  the trial court was directed to "make more specialized findings and determine whether any of the procedures allegedly performed by unlicensed personnel required formal chiropractic education or training."  *Cavoto*, 34 A.3d at 133.  Furthermore, the

---

[2] We note that given the procedural posture of this case, arguably the "solicitation issue" was not preserved for our current consideration.  We need not make that determination, however, given our grant of Appellants' application to withdraw that issue.

- 6 -

"procedures" that the parties focused on were the implementation of "therapeutic exercises" conducted in the chiropractic offices.

In support of their claim that the trial court erred in its determination on remand, Appellants assert that chiropractors are permitted to delegate the implementation and supervision of therapeutic exercises for patients pursuant to the Chiropractic Practice Act ("CPA") and the Motor Vehicle Financial Responsibility Law ("MVFRL"). Appellants' Brief at 6-12. Specifically, Appellants maintain that as part of Dr. Cavoto's treatment of patients, he prescribed "therapeutic exercise." *Id.* at 6. Appellants explain that:

> Prior to prescribing therapeutic exercise, Dr. Cavoto, or another licensed chiropractor, makes a diagnosis and determines whether therapeutic exercise would be appropriate and beneficial. If performed on premises, the actual activities are supervised by a chiropractic assistant while a licensed chiropractor remains on site.
>
> Therapeutic exercise basically consists of activities such as using stretch bands, walking on a treadmill, stretching, progressive weight lifting, and progressive aerobics.

Appellants' Brief at 6-7.

While Appellants acknowledge that the CPA "forbids chiropractors from delegating 'any activity or duty to such unlicensed individuals which requires formal education or training in the practice of chiropractic or the knowledge and skill of a licensed chiropractor," Appellants maintain that the implementation of therapeutic exercises do not require chiropractic education, skill, or training. *Id.* Appellants' Brief at 7. Appellants further assert that there was no evidence presented at the April 3 and 4, 2017 bench trial

supporting the conclusion that therapeutic exercises required chiropractic education, skill, or training. *Id.* at 8-10. Therefore, Appellants argue, the trial court's decision that Dr. Cavoto committed statutory insurance fraud under the MVFRL by delegating implementation of therapeutic exercise to unlicensed personnel was against the "weight of the evidence." *Id.* at 10. Appellants contend that "[the trial court] had no basis in law or fact to determine that delegation of therapeutic exercise violates the MVFRL." *Id.* at 12.

Our standard of review for nonjury proceedings is as follows:

> Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the fact-finder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Agostinelli v. Edwards*, 98 A.3d 695, 704 (Pa. Super. 2014).

The relevant statute in the MVFRL provides:

An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title ... shall make available for purchase first party benefits with respect to injury arising out of the maintenance or use of a motor vehicle as follows:

> (1) Medical benefit.—Subject to the limitations of section 1797 (relating to customary charges for treatment), coverage to provide for reasonable and necessary medical treatment and rehabilitative services, including, but not limited to ... **chiropractic** ... all without limitation as to time, provided that, within 18 months from the date of the accident causing injury, it is ascertainable with reasonable medical probability that further expenses may be incurred as a result of the injury. Benefits under this paragraph may include any nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.

75 Pa.C.S. § 1712(1) (emphasis added).

Because the MVFRL does not provide specific definitions for some terms in 75 Pa.C.S. § 1712(1), we turn to the CPA. "Chiropractic" is defined under the Act as:

> A branch of the healing arts dealing with the relationship between the articulations of the vertebral column, as well as other articulations, and the neuro-musculo-skeletal system and the role of these relationships in the restoration and maintenance of health. . . . The term shall . . . include . . . the use of **adjunctive procedures** in treating misaligned or dislocated vertebrae or articulations and related conditions of the nervous system, provided that, after January 1, 1988, the licensee must be certified in accordance with this act to use adjunctive procedures; and nutritional counseling, provided that nothing herein shall be construed to require licensure as a chiropractor in order to engage in nutritional counseling.

63 P.S. § 625.102 (emphasis added). "Adjunctive procedures" is defined as "Physical measures such as mechanical stimulation, heat, cold, light, air, water, electricity, sound, massage and mobilization." *Id.*

The following provisions of the CPA also are instructive:

**§ 625.304. Certification to use adjunctive procedures**

>   **(a)   Qualifications.** – In addition to its other powers and duties under this act, the board shall have the power and duty to certify qualified licensees to use adjunctive procedures….

63 P.S. § 625.304(a).

>   **§ 625.601.  Supportive personnel**
>
>   Nothing in this act shall prohibit a licensed chiropractor from utilizing the assistance of unlicensed supportive personnel performing under the direct on-premises supervision of a licensed chiropractor, **provided that a chiropractor may not delegate any activity or duty to such unlicensed individuals which requires formal education or training in the practice of chiropractic or the knowledge and skill of a licensed chiropractor.**

63 P.S. § 625.601 (emphasis added).  Thus, the CPA does not specifically state which adjunctive procedures, including therapeutic exercises, may be delegated to unlicensed supportive personnel.

With these statutory provisions in mind, we consider the trial court's determination of the issue this Court placed before it on remand.  The trial court was directed to "make more specialized findings and determine whether any of the procedures allegedly performed by unlicensed personnel required formal chiropractic education or training."  ***Cavoto***, 34 A.3d at 133.  Again, the procedures at issue and contested by the parties were adjunctive procedures classified as "therapeutic exercises."

As noted, the trial court held a nonjury trial on April 3 and 4, 2017.  During that proceeding, the trial court heard testimony from Dr. Cavoto; State Farm's expert, Michael Schneider, D.C. ("Dr. Schneider"); and Appellants' expert, Jonathon McCullough, D.C ("Dr. McCullough").  Trial Court Opinion,

- 10 -

7/7/17, at 5; N.T., 4/3/17 at 1-63; N.T., 4/4/17, at 1-292.  The trial court summarized the testimony of the witnesses in its opinion.  Trial Court Opinion, 7/7/17, at 5-9.  After considering the testimony and evidence presented, the trial court made the following determination:

> the key word is "therapeutic" when discussing therapeutic procedures and exercises.  The proper application of *therapeutic* procedures involves constant dialogue and observation between a patient and a skilled practitioner.  In order to achieve the goal of effecting change through the application of clinical skills, the practitioner must modify the procedures when necessary based on patient feedback and observation.  Responding to patient feedback is an essential element of therapeutic procedures and requires the clinical decision-making of a skilled practitioner.  In a chiropractic setting, knowing how and when to make what are often subtle modifications to a patient's care requires the formal education and training of a licensed chiropractor and, for this reason, cannot be delegated to unlicensed support staff.

Trial Court Opinion, 7/7/17, at 12-13.  Accordingly, the trial court concluded that "Therapeutic exercise may not be delegated to unlicensed support staff." *Id.* at 13.

Our review of the notes of testimony from the April 3 and 4, 2017 trial reflects that the trial court's summation of testimony and evidence presented is supported by the record.  Specifically, testimony from Dr. Schneider, State Farm's expert, supports the trial court's determination regarding the nature of therapeutic exercises, and the need for a licensed chiropractor to be involved in the implementation of those exercises:

> [Dr. Schneider]:  [T]herapeutic exercises are required [sic] active involvement from the patient.  The patient's not a passive recipient of the procedure.  They're actively involved with the

clinic[ian] in a one on one relationship developing muscular strength, endurance and flexibility.

* * *

[State Farm's Counsel]: Okay. So, with therapeutic exercises, what component of the supervision of therapeutic exercises involves that skilled involvement and clinical decision-making?

[Dr. Schneider]: Well, every aspect of the encounter during therapeutic exercise requires an understanding of anatomy, physiology, muscle activity, form, all these things are being -- there's a real time assessment that occurs during the application of therapeutic exercise, which makes it very, very impossible to parse out the clinical decision-making part from some mundane part that can be delegated. It's just intricately a part of therapeutic exercise, where it's not an intricate part of [passive therapies]. It is an intricate part of [manual therapy] because you can't separate the knowledge, skill and training it takes in manual therapy into two parts, the knowledge and skillful part and the unknowledgeable part. The same is true with therapeutic exercise. It's not true with the others. That's why I believe that there are many components of the other passive procedures that can be safely delegated to staff personnel.

[State Farm's Counsel]: Are there any aspects of these therapeutic exercises that do not require formal education and training?

[Dr. Schneider]: No. As I said, that's why I don't believe you can parse out sections of this one on one supervised session to somebody else. It's an intricate component of the procedure itself.

N.T., 4/4/17, at 51-55. Furthermore, when Dr. Schneider was again asked if "any component of therapeutic exercises can be parsed out because it does not involve chiropractic education and training," Dr. Schneider responded as follows:

- 12 -

> Again, the application of therapeutic exercises inherently involves clinical decision-making that can't be parsed out and requires real time assessment between clinician and patient and the clinician has to be skillful and knowledgeable about exercise science to perform it correctly.

*Id.* at 144. Thus, Dr. Schneider consistently opined that application of therapeutic exercise is not delegable to unlicensed support staff. *Id.* at 60.

Moreover, Appellants' expert, Dr. McCullough, while stating his opinion that therapeutic exercise may be delegated to support staff, N.T., 4/4/17, at 208, acknowledged there can be situations involving therapeutic exercise where the licensed practitioner should be involved because the practitioner needs to be making "real time decisions on what the patient can and cannot do[.]" *Id.* at 250. Dr. McCullough agreed that those adjustments and modifications necessary during some therapeutic exercises should be made by the licensed practitioner and would not be appropriate to be delegated to unlicensed support personnel. *Id.* at 250-253.

Thus, after due consideration of the evidence, which the trial court found credible, we conclude that the trial court reasonably determined that therapeutic exercises cannot be delegated to unlicensed support personnel. Contrary to Appellants' assertion, this conclusion is supported by ample testimony presented at trial. Indeed, Appellants' position appears to be simply that the trial court should have disregarded the testimony of Dr. Schneider and accepted the testimony of Dr. Cavoto and Dr. McCullough as determinative. Because the trial court's finding is supported by the evidence

of record, and we discern no misapplication of the law, we may not substitute our judgment for that of the trial court. ***Agostinelli***, 98 A.3d at 704. We decline Appellants' invitation to do so.

Accordingly, we conclude that the trial court's determination that implementation of therapeutic exercise may not be delegated to unlicensed support staff is supported by the record and we discern no error in application of the law in this determination. We further note that the trial court's rulings regarding other adjunctive procedures, in addition to therapeutic exercise, are also supported by evidence of record. Thus, we affirm the trial court's order denying Appellants' post-trial motion challenging the trial court's conclusion regarding the "delegation issue" on remand.

Appellants' Application for Partial Withdrawal of Appeal is granted. Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/18

- 14 -